IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NATIONAL INDOOR RV CENTERS, LLC, NIRVC-AZ, LLC and NATIONAL INDOOR RV CENTERS-GA, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. _____ |
| JAYCO, INC. | § § | |
| Defendants. | § | |

<u>DEFENDANT JAYCO, INC.'S NOTICE OF REMOVAL</u>

# Exhibit "3"

# All Pleadings That Assert Causes of Action (Plaintiffs' Original Petition)

Filed: 6/7/2017 4:08:45 PM
Lynne Finley
District Clerk
Collin County, Texas
By Erika Ruiz Deputy
Envelope ID: 17484430

CAUSE NO. <u>417-02634-2017</u>

| | | |
|---|---|---|
| NATIONAL INDOOR RV CENTERS, LLC, NIRVC-AZ, LLC, and NATIONAL INDOOR RV CENTERS-GA, LLC, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| v. | § § | COLLIN COUNTY, TEXAS |
| JAYCO, INC., | § § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

COMES NOW Plaintiffs National Indoor RV Centers, LLC ("NIRVC"), NIRVC-AZ, LLC ("NIRVC-AZ"), and National Indoor RV Centers-GA, LLC ("NIRVC-GA") (collectively, "Plaintiffs"), complaining of Defendant Jayco, Inc. ("Defendant" or "Jayco"), and file this Original Petition, and would respectfully show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.      Discovery in this case should be conducted under Level 2 of Texas Rule of Civil Procedure 190.3.

### II.
### RULE 47 STATEMENT

2.      Plaintiff seeks monetary relief of over $1,000,000. Tex. R. Civ. P. 47(c)(5).

### III.
### PARTIES

3.      NIRVC is a Delaware limited liability company with its principal place of business at 5501 Independence Parkway, Suite 314, Plano, TX 75023. NIRVC is a citizen of Delaware and Texas.

4.     NIRVC-AZ is an Arizona limited liability company with its principal place of business at 22425 N. 16th Street, Phoenix, Arizona 85024 and NIRVC-AZ is a wholly owned subsidiary of NIRVC.  NIRVC-AZ is a citizen of Arizona.

5.     NIRVC-GA is a Georgia limited liability company with its principal place of business at 1350 Hurricane Shoals Road, Lawrenceville, Georgia 30043 and is a wholly owned subsidiary of NIRVC.  NIRVC-GA is a citizen of Georgia.

6.     Defendant is a Delaware corporation with its principal place of business at P.O. Box 460, Middlebury, Indiana 46540.  Defendant may be served with process by and through the Texas Secretary of State at 1019 Brazos, Room 105, James E. Rudder Building, Austin, Texas 78701, Attn: Service of Process.  Defendant may also be served with process by and through its registered agent, Wilbur Bontrager, at 903 S. Main Street, Middlebury, Indiana 46540. Defendant is a citizen of Delaware and Indiana.

**IV.**
**JURISDICTION AND VENUE**

7.     The Court has personal jurisdiction over Defendant because Defendant has transacted business in Texas that gives rise to this action.  Specifically, Defendant purposefully availed itself of Texas law when it conducted meetings with NIRVC in Texas, conducted telephone conferences with NIRVC in Texas, directed marketing activities toward NIRVC in Texas, and made misrepresentations to NIRVC in Texas.  *See Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 577-78 (Tex. 2007) (personal jurisdiction over out-of-state defendant appropriate where defendant directed marketing activities at Texas and established regular communication with its customers); *see also Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC,* 324 S.W.3d 840, 848-49 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (representations made during meetings and telephone calls in Texas were sufficient to establish personal jurisdiction)

---

The representations made by Defendant in Texas caused Plaintiffs to: (1) purchase Defendant's products; (2) open a dealership in Arizona to sell Defendant's products; (3) construct a $13.5 million facility in Georgia to sell Defendant's products; (4) expend significant resources to market Defendant's products; and (5) enter into warranty agreements with Defendant. The dispute between Plaintiffs and Defendant directly relates to Defendant's contacts with Texas. Furthermore, Defendant is a licensed manufacturer registered with the Texas Department of Motor Vehicles.

8.      The Court has jurisdiction over the claims at issue in this lawsuit because the amounts at issue are within the jurisdictional limits of the Court.

9.      Venue is proper in Collin County pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) because this is where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.

## V.
## FACTUAL BACKGROUND

10.      NIRVC is a Texas-based, privately held company that owns and operates recreational vehicle ("RV") dealerships in Texas, Arizona, and Georgia.[1]  NIRVC opened its first location in Lewisville, Texas in July 2009 and has since grown to become one of the most prominent motorized RV dealers in the country.  In addition to selling RVs, NIRVC also provides storage facilities and both warranty and non-warranty repair services.

11.      Defendant is an RV manufacturer headquartered in Indiana.  Over the years, Defendant has manufactured RVs under a number of brand names, including "Entegra" and "Jayco."  Defendant was purchased by another RV manufacturer, Thor Industries, Inc. ("Thor"), on June 30, 2016 and is now a wholly owned subsidiary of Thor.

---

[1] NIRVC owns the Arizona and Georgia dealerships through NIRVC-AZ and NIRVC-GA, respectively.

**A.    ORIGINS OF THE RELATIONSHIP BETWEEN NIRVC AND JAYCO.**

12.    The relationship between NIRVC and Defendant started in 2012, when Defendant's Vice President of Motorized Sales, Chuck Lasley ("Lasley") and NIRVC's then-President Hal Kendrick ("Kendrick") began discussing the idea of NIRVC selling Defendant's Entegra brand in Georgia.  In 2013, Defendant's Regional Sales Manager, Jason Bontrager, sent a dealer application to NIRVC in Texas, which NIRVC completed and returned.

13.    Defendant consummated the relationship on May 17, 2013 when it approved NIRVC's dealer application in an email to NIRVC's chief operating officer and chief financial officer, Angelo Prieto ("Prieto"), who was located at NIRVC's headquarters in Texas.  NIRVC began selling the Entegra brand at a temporary leased facility in Georgia.  NIRVC then proceeded with the design and construction of a $13.5 million facility nearby, an investment made in reliance upon Defendant's representations that Plaintiffs could sell the Entegra brand in Georgia.  In the interim, NIRVC established itself as one of the top three volume Entegra dealers in the country.

**B.    JAYCO INDUCES NIRVC TO OPEN A NEW DEALERSHIP.**

14.    Defendant later proposed that NIRVC open a new dealership in Arizona to market and sell Defendant's Entegra and Jayco brands.  Although NIRVC did not have operations in Arizona prior to Defendant's proposal, NIRVC was nevertheless an attractive candidate to open an Arizona dealership because of its robust sales and successful business model.  In early 2015, then-President of Jayco's Motorized Division Tadd Jenkins ("Jenkins")[2] emailed a proposal to NIRVC's CEO Brett Davis ("Davis") in Texas, wherein Jenkins asked for NIRVC to open a

---

[2] As discussed below, Jenkins no longer works for Jayco and has since become President of NIRVC.

dealership in Phoenix to sell Defendant's products. Jenkins and Defendant's Vice President of Product Development, Pat Carroll, traveled to Texas in early 2015 to discuss the proposed dealership with Davis. During this meeting, Jenkins reiterated Defendant's desire for NIRVC to move into the Arizona market to sell Defendant's products.

15.     On July 17, 2015, Jenkins emailed Davis at NIRVC's Lewisville, Texas dealership to request a response to the dealership proposal.   Based on Defendant's representations at the Texas meeting, along with Defendant's repeated telephone calls and emails, Davis affirmed NIRVC's interest in opening the new dealership. Over the next several months, Jenkins and Davis conducted a number of in-person and telephone conferences—many of which occurred in Texas—to discuss the arrangement.   During these meetings, Jenkins encouraged NIRVC to enter the Arizona market, while representing that it would give NIRVC the rights to sell the Entegra and Jayco brands there. Davis made it clear that NIRVC could not operate a financially viable dealership in Arizona without being able to sell both the luxury line of Entegra RVs and the more affordable line of Jayco RVs.

16.     On July 26, 2016, Jenkins and one of Defendant's sales managers traveled to Texas to meet with Davis and Prieto to discuss Defendant's expectations for sales at NIRVC's new Arizona dealership. On July 28, 2016, Jenkins met yet again with Davis and Prieto in Texas to discuss granting NIRVC the rights to sell the Entegra brand while also proposing that NIRVC sell the lower-priced Jayco brand.[3]  Jenkins stated that the Jayco brand could be sold in Arizona because Defendant was accepting the voluntary termination of an existing Arizona dealer.  On August 1, 2016, Defendant's Regional Sales Manager, Ted Cook ("Cook"), affirmed the arrangement by asking NIRVC to complete an application to sell the Entegra and Jayco brands.

---

[3] The parties also discussed the possibility of NIRVC selling a new brand that Defendant was developing. Those discussions are described in greater detail below. *See infra* C.

**PLAINTIFFS' ORIGINAL PETITION**
18432855v.8

Page 5



17.     In reliance upon Defendant's representations that NIRVC would be able to sell Entegra and Jayco brand products, NIRVC took certain steps, including but not limited to: (1) forming an Arizona limited liability company (NIRVC-AZ); (2) recruiting, hiring, and training new employees who were then relocated to Arizona; (3) purchasing vehicles, furniture, and other office equipment; (4) arranging for financing with its lenders; (5) entering into a lease agreement for real estate to be used for the new dealership; and (6) obtaining a dealership license from the State of Arizona.   On November 3, 2016 and November 9, 2016, respectively, Cook sent additional applications to NIRVC in Texas, which permitted NIRVC to sell Defendant's products.

## C.     JAYCO MARKETS A NEW PRODUCT LINE TO NIRVC.

18.     During this same time period, Jenkins proposed to Davis that NIRVC sell the newly-proposed "Envoy" brand in Texas and Georgia.  During the aforementioned July 26, 2016 meeting in Texas, Jenkins and the National Sales Manager for Envoy, Nic Martin, discussed the particulars of the proposed arrangement, including (1) Defendant's expectations for Envoy sales in Texas and Georgia; (2) the agreements necessary to effectuate the arrangement; and (3) prospective design changes.    Defendant and NIRVC had similar discussions during the subsequent July 28 meeting in Texas.

19.     Following the July 2016 meetings, Prieto exchanged emails with Nic Martin, wherein they discussed the agreements necessary to sell the Envoy brand.  NIRVC subsequently received and executed the Envoy contracts.[4]

## D.     JAYCO'S NEW MANAGEMENT TEAM REITERATES ITS COMMITMENT TO NIRVC.

20.     On November 18, 2016, Davis and Prieto learned that Jenkins had been dismissed from Jayco.  Defendant's CEO, Derald Bontrager, ("Bontrager") called Davis to assure him that

---

[4] Defendant later scrapped the Envoy project when it dismissed Jenkins.

Page 6

nothing would change in the relationship. When Davis asked for specific assurances regarding the Arizona dealer agreement and other items involving the NIRVC relationship, Bontrager scheduled a conference call to include Defendant's Chief Operating Officer, Matt Thompson ("Thompson"). On November 21, 2016, Prieto participated in the telephone conference from NIRVC's Texas headquarters, along with Davis who was traveling in Georgia, with Bontrager and Thompson. Bontrager and Thompson told Davis and Prieto that NIRVC was one of Defendant's most valued dealers and assured them that Defendant would honor the prior arrangements and continue its relationship with NIRVC. Later that same day, Lasley communicated to NIRVC's Texas office that the application for the Arizona dealership had been approved and similarly assured NIRVC that the deal would move forward as previously discussed.

21.     Based on the assurances given by Defendant, Prieto requested that Defendant send a letter of appointment to be used in NIRVC's application for a dealership license. This letter, which evidenced the relationship between Defendant and NIRVC, was required by the State of Arizona in order to receive a dealership license. The letter of appointment specifically appointed NIRVC-AZ to sell the Entegra and Jayco brands in the State of Arizona. On November 22, 2016, Defendant sent the requested letter of appointment to NIRVC's Texas headquarters, which NIRVC then forwarded to the State of Arizona along with the license application.

22.     Defendant thereafter continued to reaffirm the arrangement. In particular, Defendant stated that an existing dealer in Arizona was being terminated for the express purpose of allowing NIRVC to assume the territory. Defendant required that NIRVC purchase all of the outgoing dealer's Jayco products before opening the new dealership. NIRVC eventually

purchased and took physical possession of the outgoing dealer's products on December 8, 2016. By December 20, 2016, NIRVC had secured lines of credit from its bank and had issued purchase orders to Defendant for the existing inventory.

23.     Thereafter, Defendant and Thor had a series of interactions with NIRVC wherein Defendant reiterated its commitment to the relationship with NIRVC:

      a.     January 16, 2017 – Thor's CEO, Bob Martin ("Martin"), met with Davis to discuss NIRVC's business model;

      b.     January 19, 2017 – Thompson and Jayco Vice President, Ken Walters ("Walters"), met with NIRVC to discuss business strategy;

      c.     January 26, 2017 – Walters traveled to NIRVC's Georgia dealership to review its operations and reiterate that Defendant valued NIRVC's status as an important Jayco dealer;

      d.     February and March 2017 – Defendant compelled NIRVC to purchase new Entegra RVs to be displayed at rallies in Arizona; and

      e.     February 6, 2017 – Defendant offered NIRVC several 2017 model year Jayco brand RVs for the Arizona dealership, which NIRVC purchased.

24.     On February 9, 2017, Walters presented a list of recommended 2018 Jayco models for NIRVC to order for the Arizona dealership. Based on Walters' recommendations, NIRVC placed orders from its Texas headquarters for seventeen (17) Jayco units. On March 29, 2017, Plaintiff received confirmation that Defendant's Regional Sales Manager, Chris Elledge ("Elledge"), had received NIRVC's Jayco orders. The following day, Elledge informed NIRVC that all orders had been forwarded to Walters for fulfillment. Throughout its dealings with NIRVC, Defendant consistently represented that it would deal with NIRVC under similar terms and pricing as Defendant's other large dealers.

**E.     NIRVC SELECTS JENKINS AS ITS NEW PRESIDENT.**

25.     On February 17, 2017, NIRVC appointed Jenkins as its new president. That same day, Davis called Martin to inform him of NIRVC's decision prior to making any announcement

Martin raised no objections and congratulated Davis on Jenkins' appointment. Two days later, Davis and Jenkins traveled to Indiana to meet with Walters to discuss Jenkins' new role. Walters assured them that the relationship between Defendant and NIRVC would remain unchanged. On March 9, 2017, Davis and Jenkins joined Walters, Lasley, and others from Jayco for a dinner meeting at an RV rally in Arizona. Defendant again reassured NIRVC that it was satisfied with the relationship and that the agreements would be honored.

F.   **JAYCO ABRUPTLY THREATENS TO TERMINATE THE RELATIONSHIP AND REFUSES TO FILL JAYCO BRAND ORDERS.**

26.    On March 16, 2017, Walters called Davis at his Texas office. During that call, Walters informed Davis that the relationship between Defendant and NIRVC was no longer tenable, and that NIRVC's hiring of Jenkins was a nonstarter, despite making explicit representations to the contrary during the previous weeks. Walters also accused NIRVC of colluding with Jenkins to "fraudulently" obtain its Arizona dealership license. Walters claimed that Defendant's other Entegra dealers had been complaining about NIRVC's unfair advantage through the hiring of Jenkins. According to Walters, the dealers alleged that Jenkins knew their secrets and would divulge them to NIRVC, thereby giving NIRVC an unfair advantage. Walters also stated that the dealers were threatening to cancel existing orders if Defendant did not terminate its relationship with NIRVC.

27.    On March 21, 2017, Walters and Davis met at an RV rally in South Carolina where Walters stated his belief that NIRVC had received favorable treatment through the repurchase and sale of defective Entegra RVs. Although Prieto disproved these allegations in a subsequent email, Walters nevertheless maintained that NIRVC had received improper benefits. On March 22, 2017, Davis called Martin to discuss Defendant's abrupt and unexpected change in direction. Martin expressed regret about the situation and stated that the situation could have

been remedied had he become aware of it sooner, but ultimately vowed to support the new management team at Jayco.

28.     In spite of Defendant's sudden change in rhetoric, Defendant continued to process new Entegra orders and communicated regularly with NIRVC regarding Entegra-related issues. But during a May 8, 2017 conference call with Davis, Walters unequivocally stated Defendant's intention to cancel the rights to all of NIRVC's dealerships. Although Defendant was processing NIRVC's Entegra brand orders as recently as May 2017, it has not processed, scheduled, or delivered any of NIRVC's Jayco brand orders for model year 2018.

## G.    JAYCO MAKES DISPARAGING COMMENTS ABOUT NIRVC.

29.     NIRVC also discovered that Defendant's agents were making disparaging comments about NIRVC, Jenkins, and NIRVC's business practices. On March 22, 2017, an NIRVC customer contacted Davis and told him that Walters had informed him that NIRVC was being terminated because it had fraudulently obtained its Arizona license. Walters also told the customer that Jenkins had given another dealer's proprietary information to NIRVC. Walters' statements were untrue. The following day, four more NIRVC customers contacted Davis and related similarly disparaging—and baseless—comments made by Walters. Upon information and belief, Defendant has made disparaging statements to other existing and potential NIRVC customers as well as other dealers in an effort to justify termination.

## H.    JAYCO SENDS NIRVC-AZ OFFICIAL NOTICE OF TERMINATION FOR THE ENTEGRA BRAND.

30.     On June 2, 2017, NIRVC-AZ received a notice of termination letter from Defendant, dated May 30, 2017, wherein Defendant stated its intent to terminate the Dealer Sales and Service Agreement (the "Entegra Agreement") sixty (60) days after receipt in accordance with Title 28 of the Arizona Revised Statutes (the "Notice"). The Notice erroneously alleges that

---

NIRVC-AZ breached the Entegra Agreement by making "significant misrepresentations" of fact. Defendant asserts that NIRVC-AZ has advertised and sold Entegra products through an independent contractor in Dallas, Texas,[5] despite purported promises to refrain from selling Entegra outside of the assigned territory. Importantly, the Notice does not provide an opportunity to cure the alleged breach as required under the Entegra Agreement.

31.     Upon information and belief, the Notice was sent at the behest of other dealers who were displeased with Plaintiffs' success in selling the Entegra brand. Upon information and belief, the allegations in the Notice are not genuine and the Notice is a mere subterfuge designed to placate Defendant's other dealers. Upon information and belief, Defendant also provided prices and discounts to other dealers that were not provided to NIRVC, all in an effort to force NIRVC out of business.

**I.     JAYCO REFUSES TO PAY PLAINTIFFS' WARRANTY CLAIMS IN FULL.**

32.     Defendant has failed to compensate Plaintiffs with fair and reasonable amounts for performing diagnostic work and warranty service. Despite NIRVC's repeated attempts to garner fair and reasonable payments, Defendant has to date paid substantially less that the total amount due for the warranty work that NIRVC has performed. Upon information and belief, Defendant has sold warranties to customers with the intent to not fully compensate its dealers for warranty repairs.

**J.     JAYCO HAS MAINTAINED EXTENSIVE, PURPOSEFUL CONTACTS WITH TEXAS.**

33.     Since 2012, Defendant has maintained "continuing relationships and obligations" with NIRVC. Moreover, Defendant has made certain misrepresentations to NIRVC in Texas. *See Moki Mac River Expeditions*, 221 S.W.3d at 575. First, Defendant has frequently

---

[5] To be clear, NIRVC does not have any offices, dealerships, or other facilities in Dallas. Nor does NIRVC sell any Entegra brand products from its Lewisville, Texas facility.

corresponded with NIRVC over the past four years to discuss, among other things: (1) NIRVC selling Entegra and Jayco products in Arizona and Georgia; (2) NIRVC selling the Envoy brand in Texas and Georgia; and (3) other general business matters related to Defendant's products. Many of the aforementioned representations made to Plaintiffs came through email correspondence that was sent to NIRVC's Texas office.

34.     Second, Defendant has participated in countless telephone conferences with NIRVC since 2012. A significant number of these conferences relate to Defendant's efforts to induce NIRVC to open an Arizona dealership and sell Defendant's products. During these telephone conferences with NIRVC's Texas-based representatives, Defendant also represented that it wanted NIRVC to continue selling Defendant's products which induced Plaintiffs to construct a $13.5 million facility in Georgia. These representations also caused Plaintiffs to expend significant financial resources to market Defendant's products.

35.     Finally, Defendant's representatives traveled to Texas to meet with NIRVC's representatives on at least three separate occasions in 2015 and 2016 to discuss a variety of issues related to this lawsuit, including:

      a.     Defendant's desire for NIRVC open a dealership in Arizona;

      b.     Defendant's desire for NIRVC to sell Defendant's products in Arizona and Georgia; and

      c.     the possibility that NIRVC could sell the Envoy brand in Texas and Georgia.

36.     Any single contact may be enough to establish personal jurisdiction over Defendant because the jurisdictional analysis focuses on the quality and nature of Defendant's contacts rather than the sheer number of contacts. *Horizon*, 324 S.W.3d at 848. In any event, Defendant's frequent, substantive contacts with Texas clearly reflect an intent to purposefully

avail itself of the laws of Texas. *See Moki Mac River Expeditions*, 221 S.W.3d at 572-73. Defendant's contacts give rise to the claims in this case.

## VI.
## CAUSES OF ACTION

**A.** **FRAUD IN THE INDUCEMENT—ARIZONA DEALERSHIP.**

37. Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

38. As shown above, Defendant represented to NIRVC that it wanted NIRVC to open a dealership in Arizona to sell Defendant's products. Defendant's representations were material because they were the basis of NIRVC's decision to open an Arizona dealership. Defendant knew that the financial viability of the Arizona dealership depended upon being able to sell both the Entegra and Jayco brands.

39. Defendant's representations that it would permit Plaintiffs to sell the Entegra and Jayco brands in Arizona were false and Defendant knew they were false when they were made, or made them recklessly without any knowledge of the truth and as a positive assertion. Defendant had no intention of properly allowing Plaintiffs to sell the Entegra and Jayco brands in Arizona on the same terms as Defendant's other dealers at the time Defendant made those representations and instead intended to deceive Plaintiffs. *See Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Defendant did not intend to treat NIRVC in the same manner as its other dealers despite representations to the contrary.

40. Defendant knowingly or recklessly made these false representations with the intent that Plaintiffs act upon them by opening a dealership in Arizona.

41.     Defendant had reason to expect that Plaintiffs would enter into binding agreements based on Defendant's false representations. Plaintiffs did in fact rely on Defendant's false representations when they proceeded to open an Arizona dealership.

42.     Defendant's false representations have caused Plaintiffs injury. Without the ability to sell the Entegra and Jayco brands as promised, Plaintiffs will have *zero* brands to sell at the Arizona dealership. All told, Plaintiffs have suffered damages in excess of $1,000,000.00 as a result of Defendant's fraudulent inducement.

**B.     FRAUD IN THE INDUCEMENT – GEORGIA FACILITY.**

43.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

44.     Defendant represented to NIRVC that it could sell the Entegra brand in Georgia. Defendant's representations were material because they were the basis of NIRVC's decision to expend $13.5 million to build a new facility in Georgia to sell the Entegra brand. Defendant knew that Plaintiffs' decision to build the new facility was based on being able to sell the Entegra brand in Georgia.

45.     Defendant's representations that it would permit Plaintiffs to sell the Entegra brand in Georgia were false and Defendant knew they were false when they were made, or made them recklessly without any knowledge of the truth and as a positive assertion. Defendant had no intention of properly allowing Plaintiffs to sell the Entegra brand in Georgia on the same terms as Defendant's other dealers at the time Defendant made those representations and instead intended to deceive Plaintiffs. *See Formosa Plastics*, 960 S.W.2d at 48. Defendant did not intend to treat NIRVC in the same manner as its other dealers despite representations to the contrary.

46.    Defendant knowingly or recklessly made these false representations with the intent that Plaintiffs act upon them by building a new facility in Georgia.

47.    Defendant had reason to expect that Plaintiffs would make significant financial commitments based on Defendant's false representations.  Plaintiffs did in fact rely on Defendant's false representations when they proceeded to build a new facility in Georgia.

48.    Defendant's false representations have caused Plaintiffs injury.  Without the ability to sell the Entegra brand as promised, Plaintiffs will suffer significant financial losses at its Georgia dealership.  All told, Plaintiffs have suffered—and will continue to suffer—damages in excess of $1,000,000.00 as a result of Defendant's fraudulent inducement.

## C.    FRAUD IN THE INDUCEMENT – MARKETING EXPENDITURES.

49.    Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

50.    Through its various agents, Defendant communicated that it intended to enter into agreements to allow Plaintiffs to sell Defendant's products in the Arizona and Georgia markets. Defendant's representations were material because they were the basis of NIRVC's decision to expend significant financial resources to market Defendant's brands in both Arizona and Georgia.

51.    Defendant's representations that it would allow Plaintiffs to sell Defendant's products in the Arizona and Georgia markets were false and Defendant knew they were false when they were made, or made them recklessly without knowledge of the truth and as a positive assertion Defendant had no intention of properly allowing Plaintiffs to sell Defendant's brands on the same terms as Defendant's other dealers at the time the representations were made and instead intended to deceive Plaintiffs. *See Formosa Plastics*, 960 S.W.2d at 48. Defendant did

not intend to treat NIRVC in the same manner as its other dealers despite representations to the contrary.

52.    Defendant knowingly or recklessly made these false representations with the intent that Plaintiffs act upon them by expending resources to market Defendant's products in Arizona and Georgia.

53.    Defendant had reason to expect that Plaintiffs would enter into binding agreements based on Defendant's false representations.  Plaintiffs did in fact rely on Defendant's false representations when they expended significant resources to market Defendant's brands.

54.    Defendant's false representations have caused Plaintiffs injury.  Plaintiffs have suffered damages in excess of $1,000,000.00 as a result of Defendant's fraudulent inducement.

**D.    FRAUD IN THE INDUCEMENT – WARRANTY CLAIMS.**

55.    Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

56.    Defendant represented to NIRVC that it would pay warranty claims covered by the manufacturer's warranty.  Defendant's representations were material as they caused NIRVC to enter into agreements to sell Defendant's products with the expectation that valid warranty claims would be paid by Defendant.  Defendant's representations further caused Plaintiffs to submit valid warranty claims with the expectation that Plaintiffs would be paid a fair and reasonable amount under the terms of the manufacturer's warranty.

57.    Defendant's representations that it would pay a fair and reasonable amount for valid warranty claims were false and Defendant knew they were false when they were made, or made them recklessly without knowledge of the truth and as a positive assertion.  Defendant had no intention of paying a fair and reasonable amount for warranty claims at the time the

representations were made and instead intended to deceive Plaintiffs. *See Formosa Plastics*, 960
S.W.2d at 48.

58.     Defendant knowingly or recklessly made these false representations with the
intent that Plaintiffs act upon them.

59.     Defendant had reason to expect that Plaintiffs would enter into binding
agreements based on Defendant's false representations.  Plaintiffs did in fact rely on Defendant's
false representations whey they entered into agreements to sell Defendant's products and
submitted valid warranty claims.

60.     Defendant's false representations have caused Plaintiffs injury.    Plaintiffs
continue to incur unwarranted expenses through Defendant's failure to pay a fair and reasonable
amount for valid warranty claims.  Plaintiffs have suffered damages in excess of $1,000,000.00
as a result of Defendant's fraudulent inducement.

**E.     NEGLIGENT MISREPRESENTATION – ARIZONA DEALERSHIP.**

61.     Plaintiffs incorporate by reference the allegations contained in each of the
preceding paragraphs.

62.     Defendant made representations to NIRVC in order to induce NIRVC to open an
Arizona dealership.  Specifically, Defendant represented that it would allow Plaintiffs to sell the
Entegra and Jayco brands in Arizona.  Defendant made these representations in the course of its
business or in transactions in which Defendant had a pecuniary interest.

63.     Defendant supplied false information for the guidance of Plaintiffs in their
business when it represented that it would allow Plaintiffs to sell the Entegra and Jayco brands in
Arizona on the same terms as Defendant's other dealers.

64.     Defendant did not exercise reasonable care or competence in communicating this information. Plaintiffs justifiably relied upon Defendant's representations when they opened a dealership in Arizona.  Plaintiffs have incurred significant costs in reliance on Defendant's representations.

65.     Defendant's negligent misrepresentations proximately caused Plaintiffs' injuries. Plaintiffs' damages exceed $1,000,000.00.

**F.     NEGLIGENT MISREPRESENTATION – GEORGIA FACILITY.**

66.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

67.     Defendant made representations to NIRVC in order to induce NIRVC to build a new facility in Georgia.  Specifically, Defendant represented that it would allow Plaintiffs to sell the Entegra brand in Georgia. Defendant made these representations in the course of its business or in transactions in which Defendant had a pecuniary interest.

68.     Defendant supplied false information for the guidance of Plaintiffs in their business when it represented that it would allow Plaintiffs to sell the Entegra brand in Georgia on the same terms as Defendant's other dealers.

69.     Defendant did not exercise reasonable care or competence in communicating this information. Plaintiffs justifiably relied upon Defendant's representations when they constructed a $13.5 million in Georgia.  Plaintiffs have incurred significant costs in reliance on Defendant's representations.

70.     Defendant's negligent misrepresentations proximately caused Plaintiffs' injuries. Plaintiffs' damages exceed $1,000,000.00.

**G.     NEGLIGENT MISREPRESENTATION – MARKETING EXPENDITURES.**

71.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

72.     Defendant made representations to NIRVC in order to induce NIRVC to expend substantial resources to market the Entegra and Jayco brands in Arizona and Georgia. Defendant made these representations in the course of its business or in transactions in which Defendant had a pecuniary interest.

73.     Defendant supplied false information for the guidance of Plaintiffs when it represented that it wanted Plaintiffs to sell Defendant's products in Arizona and Georgia on the same terms as Defendant's other dealers.

74.     Defendant did not exercise reasonable care or competence in communicating this information. Plaintiffs justifiably relied upon Defendant's representations when they expended significant resources to market Defendant's brands in Arizona and Georgia. Plaintiffs have incurred significant costs in reliance on Defendant's representations.

75.     Defendant's negligent misrepresentations proximately caused Plaintiffs' injuries. Plaintiffs' damages exceed $1,000,000.00.

## H.     NEGLIGENT MISREPRESENTATION – WARRANTY CLAIMS.

76.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

77.     Defendant made representations to NIRVC in order to induce NIRVC to enter into agreements to sell Defendant's products with the expectation that Defendant would pay a fair and reasonable amount for valid warranty claims. Defendant made these representations in the course of its business or in transactions in which Defendant had a pecuniary interest.

78.     Defendant supplied false information for the guidance of Defendants when it represented that it would honor manufacturer warranties.

79.     Defendant did not exercise reasonable care or competence in communicating this information.  Plaintiffs justifiably relied upon Defendant's representations when they entered into agreements to sell Defendant's products and submitted valid warranty claims.  Plaintiffs have incurred significant costs in reliance on Defendant's representations and continue to incur gratuitous expenses because of Defendant's failure to pay a fair and reasonable amount for valid warranty claims.

80.     Defendant's negligent misrepresentations proximately caused Plaintiffs' injuries.  Plaintiffs' damages exceed $1,000,000.00.

## I.     BREACH OF CONTRACT – ARIZONA.

81.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

82.     Plaintiffs had a valid and enforceable contract with Defendant to purchase and sell the Entegra and Jayco brands in Arizona.  Plaintiffs are the proper parties to bring suit against Defendant for breach of the contract.  The contract was entered into by Plaintiffs in Texas.

83.     Plaintiffs performed their obligations under the contract.  Defendant nevertheless breached the contract when it terminated the agreement with Plaintiffs without cause.  Defendant further breached the contract by not providing an opportunity to cure Plaintiffs' alleged breach as required under the Entegra Agreement.

84.     Defendant's breach has caused Plaintiffs' injury.

## J.     BREACH OF CONTRACT – GEORGIA.

85.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

86.     Plaintiffs had a valid and enforceable contract with Defendant to purchase and sell the Entegra brand in Georgia.  Plaintiffs are the proper parties to bring suit against Defendant for breach of the contract.  The contract was entered into by Plaintiffs in Texas.

87.     Plaintiffs have performed their obligations under the contract.  Defendant's conduct in terminating the Entegra Agreement in Arizona demonstrates a fixed intention to renounce the Georgia contract without cause.  Such renouncement constitutes repudiation and breach of the Georgia contract by Defendant.

88.     Defendant's breach has caused Plaintiffs' injury.

### K.     WARRANTY VIOLATIONS UNDER TITLE 10 OF THE GEORGIA CODE.

89.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

90.     Defendant has repeatedly failed to compensate Plaintiffs a fair and reasonable amount within thirty (30) days for warranty service performed under Defendant's manufacturer warranties, which constitutes a violation of Title 10 of the Georgia Code.  Ga. Code § 10-1-679.10(a).  Defendant's violations entitle Plaintiffs to actual damages, attorneys' fees, and injunctive relief.  Ga. Code § 10-1-679.11.  Under Georgia law, this action is properly before this Court as it is a court of competent jurisdiction.  *Id.*

### L.     BUSINESS DISPARAGEMENT.

91.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

92.     As discussed in detail above, Defendant published disparaging statements about Plaintiffs' economic interests to Plaintiffs' customers and others.  In particular, Defendant's agent told Plaintiffs' customers that Jenkins and NIRVC had conspired to obtain a fraudulent license in Arizona, disclose proprietary information belonging to another dealer, and otherwise

improperly favor NIRVC. Such statements were untrue and were designed to disparage and harm Plaintiffs' economic interests.

93.     Defendant's disparaging statements were false and were published with malice. Defendant knew the statements were false, acted with reckless disregard for whether the statements were true, acted with ill will, or intended to interfere with Plaintiffs' economic interest. *See Hurlbut v. Gulf Atl. Life Ins.*, 749 S.W.2d 762, 766 (Tex. 1987). Furthermore, Defendant published these statements without privilege.

94.     Defendant's disparaging statements caused special damages to Plaintiffs. Plaintiffs are therefore entitled to actual damages, exemplary damages, and court costs.

## VII.
## EXEMPLARY DAMAGES

95.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

96.     Plaintiffs' injuries resulted from Defendant's intentional acts, which entitle Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code Section 41.003(a).

## VIII.
## DAMAGES

97.     Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

98.     As will be established at trial, Defendant's tortious acts and statutory violations have proximately caused Plaintiffs to suffer damages in excess of $1,000,000.00. Plaintiffs are entitled to actual damages, exemplary damages, attorneys' fees, and court costs.



## IX.
## CONDITIONS PRECEDENT

99.    Plaintiffs incorporate by reference the allegations contained in each of the preceding paragraphs.

100.    All conditions precedent have been performed, have occurred, or have been waived.

## X.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that after a trial or other final hearing on the merits, the Court enter judgment for Plaintiffs for recovery from Defendant of actual damages, exemplary damages, attorneys' fees, and court costs, together with pre-judgment interest on such damages at the maximum allowable rate, and post-judgment interest on all amounts awarded until paid.   Plaintiffs request all such other and further relief, both general and special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

/s/ Jeffrey G. Hamilton
**Jeffrey G. Hamilton**
State Bar No. 00793886
jhamilton@jw.com
**Justin V. Lee**
State Bar No. 24097982
jlee@jw.com
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 661-6899

**ATTORNEYS FOR PLAINTIFFS**



**STATE OF TEXAS       )**
**COUNTY OF COLLIN )**
**I, Lynne Finley**, District Clerk in and for Collin County Texas,
do hereby certify that the above foregoing is a true and correct copy of the
original document as the same appears on the file in the **District Court**,
Collin County, Texas. Witness my hand and seal of said **Court, this**
the _____ day of _____ A.D., 20___
          LYNNE FINLEY, DISTRICT CLERK
          COLLIN COUNTY, TEXAS
                                        _____ DEPUTY